```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
---

ADAN D. GONZALEZ,

                        Petitioner,

   -vs-                                 **No. 6:14-CV-6089(MAT)**
                                                     **DECISION AND ORDER**
DALE ARTUS,

                        Respondent.

---

**I.  Introduction**

Adan D. Gonzalez ("Petitioner") has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is being detained in State custody in violation of his Federal constitutional rights. Petitioner is incarcerated as the result of a judgment entered on September 18, 2008, in Monroe County Court (Valentino, J.), of New York State, following a jury verdict convicting him of one count of Rape in the First Degree (N.Y. Penal Law ("P.L.") former § 130.35(3)), and three counts of Sexual Abuse in the First Degree (P.L. former § 130.65(3)).

**II.  Factual Background and Procedural History**

Between February 1, 2007, and February 28, 2007, Petitioner raped and sexually abused S.P., the sister of his girlfriend, Tina Richardson ("Tina"). The abuse occurred at Tina's house at 1308 East Main Street, in Rochester, New York. Based on these acts, Petitioner was charged, by a Monroe County Grand Jury, with one count of Rape in the First Degree, and three counts of Sexual Abuse

-1-

in the First Degree. Petitioner's trial commenced on January 15, 2008.

S.P. related that one night in February 2007, she spent the night at Tina's house. She could not recall the exact date, but she knew it was cold out and she was in fifth grade. She recalled that it was sometime around Valentine's Day. That night, S.P. was lying in Tina's bed, along with Tina and Petitioner. S.P. was lying closest to the wall, Tina was in the middle, and Petitioner was on Tina's other side. Petitioner and Tina's three-year-old daughter also was in her crib in the room.

At some point, S.P. fell asleep. She woke up to find Petitioner lying next to her and touching her leg. He then put his hand inside her pants and touched her buttocks and her "private," which she explained was where she went "pee-pee". Then, Petitioner pulled down S.P's pants to her thighs and put his "private went into her [pee-pee]" "a little", which was painful to her. S.P. moved away, turned over, pulled up her pants, and went back to sleep.

Tina had been given Vicodin by Petitioner because she was having back pain, and slept through the entire incident. Tina recalled that when she had fallen sleep, she was in the middle of the bed, with Petitioner and S.P. on either side of her. When she woke up the next morning, Petitioner was in the middle of the bed and Tina was up against one wall; S.P. was in the same spot.

S.P. did not wake up her sister because she was afraid that Petitioner would hurt her or her family. She explained that she did not tell her sister or her mother the next day because she was still scared. Several months later, around Halloween, S.P. told her mother what had happened. At that time, Tina was no longer living with Petitioner and S.P. did not see him anymore.

A few days later, on November 6, 2007, S.P.'s mother, Tammy Richardson ("Tammy") called the police and spoke to a male officer. S.P. was hesitant to talk to him, so Tammy had to speak on her behalf. On December 11, 2007, they met with a female officer, Jacqueline Pulsifer, at Tammy's house, but it was very busy and S.P. still was hesitant to speak. Officer Pulsifer interviewed S.P. a second time at a children's center, which was quieter environment. There, S.P. told Officer Pulsifer what had happened. Officer Pulsifer referred the child to a pediatric nurse practitioner, who performed a pelvic examination but found no physical abnormalities. The nurse practitioner testified that it was common for children not to have any physical injury, even after penetration, because any injury can heal quickly.

Petitioner's attorney presented an alibi defense at trial and attempted to establish that even though S.P. could not pinpoint the date that the crime had occurred, Petitioner had a valid alibi for the entire month of February 2007. Defense counsel presented several witnesses to support this defense, including Petitioner's

long-time friend, Marsh, who testified that she saw Petitioner almost every day. Defense counsel also called Petitioner's fiancée, who testified that in February 2007, Petitioner spent the weekend evenings and nights with her. Petitioner's mother testified that Petitioner lived with her in February 2007. Petitioner also testified in support of his alibi, and recounted the various parties he went to in February 2007, and friends' houses at which he stayed; his activities on Valentine's Day; and an overnight trip he took in the middle of February with friends. Petitioner denied that he spent a night at 1308 East Main Street during the month of February 2007, and he denied that he gave Vicodin to Tina. Petitioner denied that, during a telephone call to his mother, he said, "I'm trying to get out of here and I will say anything I can." Petitioner listened to a recording of the call and maintained that he only said "I'm just trying to get out." T.484-85. Petitioner testified that he did get stabbed in jail with a pencil, but he did not report it and did not receive any medical attention for it.

Several recorded telephone conversations between Petitioner; his mother, Ada Gonzalez ("Gonzalez"); and his fiancée, Carolynne Reed ("Reed"), were introduced into evidence. After his arrest, Petitioner called his mother and told her to call "Teo", his cousin who worked for the Rochester Police Department ("RPD"), and get the police report in this case from him. Gonzalez called Teo, but

Gonzalez denied that he obtained S.P's confidential supporting deposition for her. She also denied that she told Petitioner that Teo told her, "I can show you the paper but I can't give it to you." After listening to a recording of a telephone conversation she had had with Petitioner, Gonzalez admitted that she had been on the phone talking with Reed and Petitioner when she said to them that the Teo "would let [her] see [the police report] but he wouldn't let [her] have it". T.383-90.

In another telephone conversation, on December 27, 2007, Petitioner asked Gonzalez to tell "Angel", Petitioner's brother, to tell Tina that he had been stabbed in jail. T.395-95, 400.

During a telephone conversation between Petitioner and Reed, he told her to call his friend, Amanda Marsh ("Marsh") and let her know that she has "to say she called [Petitioner] every single day, January, February, March at [his] house." Petitioner also told Reed, to tell another friend, "Rachael" that "she has to testify stating that she and Kiley were with me almost every single day. Don't say night because if they say night, [Marsh]'s statement is out the window. Say day, not night." T.424-25, 427.

The jury returned a verdict convicting Petitioner of all charges in the indictment. On September 18, 2008, he was sentenced to a determinate term of fifteen years, plus five years of post-release supervision on the rape count. On each of the sexual abuse counts, he was sentenced to concurrent determinate terms of

seven years, plus three years of post-release supervision.

Represented by new counsel, Petitioner appealed to the Appellate Division, Fourth Department, of New York State Supreme Court. On October 2, 2012, the Appellate Division unanimously affirmed the conviction. On February 13, 2013, a judge of the New York Court of Appeals denied leave to appeal. People v. Gonzalez, 99 A.D.3d 1217 (4th Dep't 2012), lv. denied, 20 N.Y.3d 1061 (2013).

This timely habeas petition followed in which Petitioner asserts the following grounds for relief: (1) trial counsel was ineffective for failing to obtain certain recorded jailhouse telephone calls between Petitioner and other witnesses; (2) the prosecutor violated Petitioner's due process rights by failing to disclose the jailhouse telephone calls to defense counsel despite knowing that they would be used as exhibits at trial; and (3) Petitioner's sentence was harsh and excessive. Respondent filed an answer and opposition memorandum of law, interposing the defense of non-exhaustion as to the prosecutorial misconduct claim, and arguing that all of Petitioner's claims lack merit. Petitioner filed a reply. For the reasons discussed below, the petition is dismissed.

**III. Discussion**

    **A.   Ineffective Assistance of Trial Counsel**

Petitioner asserts, as he did on direct appeal, that trial counsel failed to conduct a proper investigation  because he did

not request discovery pursuant to New York Criminal Procedure Law ("C.P.L.") § 240.20 from the prosecutor of the recorded jailhouse telephone conversations between Petitioner and various witnesses. The Appellate Division "reject[ed] that contention," finding that "[]even if defense counsel had sought discovery of those recordings, . . . the People would not have been obligated to disclose them. . . ." People v. Gonzalez, 99 A.D.3d at 1217 (citations omitted). The Appellate Division noted that C.P.L. § 240.20(1)(g) "requires the prosecutor, upon a demand to produce by a defendant, to disclose to the defendant and make available for inspection or copying '[a]ny tapes or other electronic recordings *which the prosecutor intends to introduce at trial*[.]" Gonzalez, 99 A.D.3d at 1217 (quoting N.Y. CRIM. PROC. LAW § 240.20(1)(g) (emphasis and bracket in original)). The Appellate Division observed that "the recordings were not offered in evidence; rather, they were used only for impeachment purposes or to refresh the recollection of [Petitioner]'s witnesses[.]" Id. (citing, inter alia, People v. Muller, 72 A.D.3d 1329, 1335-36 (3d Dep't 2010)). In sum, the Appellate Division concluded, Petitioner's counsel provided meaningful representation. Id. at 1218 (citing People v. Baldi, 54 N.Y.2d 137, 147 (1981)).

In order to establish that he received the ineffective assistance of trial counsel, a petitioner must show both that his attorney provided deficient representation and that he suffered

prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687 (1984). The petitioner bears the burden of overcoming the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." Id. at 689. Prejudice requires showing a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Although Strickland has two prongs for evaluating counsel's performance, the reviewing court need not address both if the petitioner's showing on one prong is lacking. See id. at 697.

Here, the Appellate Division reasoned that "a defendant is not denied effective assistance of counsel based on defense counsel's failure to seek relief to which defendant is not entitled[.]" People v. Gonzalez, 99 A.D.3d at 1217 (citing People v. Taylor, 97 A.D.3d 1139, 1141-42 (4th Dep't 2012) (counsel not ineffective in failing to make a mistrial motion that had little to no chance of success) (citations omitted)). The Appellate Division went on to explain why the prosecutor would not have been obligated to turn over the tape recordings under C.P.L. § 240.20(1)(g), i.e., because they were not offered into evidence for purpose of the prosecutor's case-in-chief. In so concluding, the Appellate Division relied on its, and other New York state courts' interpretation of, C.P.L. § 240.20(1)(g). See, e.g., People v. Muller, 72 A.D.3d at 1335-36 (finding that prosecution was not

obligated to provide defendant with recordings of taped telephone conversations he had with third parties while in jail awaiting trial; prosecution did not seek to introduce any portion of these recordings as evidence-in-chief at trial but, instead, used them to impeach or refresh the recollection of witnesses who participated in these conversations and testified at trial) (citations omitted).

In general, a federal court is "bound by a State's interpretation of its own statute[.]" Garner v. State of Louisiana, 368 U.S. 157, 166 (1961); see also Bates v. McCaughtry, 934 F.2d 99, 102 (7th Cir. 1991) ("A claim that the state court misunderstood the substantive requirements of state law does not present a claim under § 2254.") (citations omitted). Based the New York State caselaw interpreting C.P.L. § 240.20(1)(g), Petitioner is unable to demonstrate prejudice as the result of trial counsel's omission, because there is no reasonable probability of a different outcome here: The prosecution would have to declined to produce the tape recordings on the basis that they were outside the ambit of C.P.L. § 240.20(1)(g) because they were not going to be used on the prosecution's direct case. Accordingly, it cannot have been objectively unreasonable for defense counsel to have failed to make a request under C.P.L. § 240.20(1)(g). See United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir. 1995) (stating that "the failure to make a meritless argument does not rise to the level of ineffective assistance") (citing United States v. Javino, 960 F.2d 1137, 1145

(2d Cir.), cert. denied, 506 U.S. 979 (1992)). Nor can Petitioner have been prejudiced given that any request would not have been successful. E.g., United States v. Thornhill, 11-CR-958(KMK), __ F. Supp.2d ___, 2014 WL 3715438, at *42 (S.D.N.Y. July 28, 2014) (because any attempt trial counsel might have made to introduce a witness' prior testimony under F.R.E. 804(b)(1) would have been unsuccessful, defendant cannot have been prejudiced by counsel's decision) (citing United States v. Abad, 514 F.3d 271, 275-76 (2d Cir. 2008); Rodriguez v. Brown, No. 11-CV-1246, 2011 WL 4073748, at *3 (E.D.N.Y. Sept. 13, 2011)). The Appellate Division did not incorrectly apply Federal law in determining that Petitioner's trial counsel provided constitutionally adequate representation, and this claim cannot provide a basis for habeas relief.

    **B.    Prosecutorial Misconduct**

Respondent argues that Petitioner failed to exhaust his claim regarding the prosecutor's allegedly improper failure to provide the recordings of Petitioner's jailhouse telephone calls to the defense because Petitioner never raised the claim in any state court proceeding. In his reply, Petitioner did not address Respondent's exhaustion and procedural default arguments.

"When a claim has never been presented to a state court, a federal court may theoretically find that there is an 'absence of available State corrective process' under § 2254(b)(1)(B)(i) if it is clear that the unexhausted claim is procedurally barred by state

law and, as such, its presentation in the state forum would be futile." Aparicio v. Artus, 269 F.3d 78, 90 (2d Cir. 2001) (quotation omitted). That is the case here. Petitioner already has used the one direct appeal to which was entitled. See, e.g., Cunningham v. Conway, 717 F. Supp.2d 339, 365 (W.D.N.Y. 2010) (citing N.Y. R. CT. §§ 500.20(a)(2), (d); N.Y. CRIM. PROC. LAW § 460.10(5); collecting cases). Collateral review in a motion to vacate pursuant to C.P.L. § 440.10(2)(c) is also barred because "sufficient facts appear on the record of the proceedings underlying the judgment" to have permitted him to raise the claims on direct appeal. See N.Y. CRIM. PROC. LAW § 440.10(2)(c) (mandating denial if sufficient facts appeared on the record to have permitted direct review but defendant unjustifiably failed to raise claim on direct appeal). Although Petitioner's prosecutorial misconduct claim must be deemed exhausted because he has no available remedies in state court, this forfeiture of the claim bars Petitioner creates a procedural bar this Court's review of the claim's merits. See, e.g., Gray v. Netherland, 518 U.S. 152, 162 (1996) (state procedural bar which gives rise to exhaustion provides an independent and adequate state-law ground for conviction and sentence, and thus prevents federal habeas corpus review of defaulted claim, unless petitioner can demonstrate cause and prejudice for default). Here, Petitioner has not alleged cause or prejudice, and the Court has found neither on the record before it.

Furthermore, Petitioner has not made the factual showing of "actual innocence" necessary to warrant the "fundamental miscarriage of justice" exception to the procedural default rule. The procedural default is unexcused, and claim of prosecutorial misconduct is dismissed on that basis.

### C.  Harsh and Excessive Sentence

Petitioner asserts that his sentence was harsh and severe in light of the fact that he was a first-time offender and was convicted based on "only circumstantial evidence with no validity" and no "physical or mental evidence". Pet., ¶ 22(B). On direct appeal, the Appellate Division declined to reduce Petitioner's sentence, finding that it was not unduly harsh or severe. Gonzalez, 99 A.D.3d at 1218.

A petitioner's assertion that the sentencing court abused its discretion in sentencing is generally not a federal claim subject to review by a habeas court. See Fielding v. LeFevre, 548 F.2d 1102, 1109 (2d Cir. 1977) (petitioner raised no cognizable federal claim by seeking to prove that state judge abused his sentencing discretion by disregarding psychiatric reports) (citation omitted). Here, Petitioner was convicted of Rape in the First Degree (Class B violent felony) and Sexual Abuse in the First Degree (Class D violent felony). See N.Y. Penal Law former §§ 130.35[3], 130.65(3); N.Y. Penal Law § 70.02(1)(a), (c). On the first-degree rape count, the court was required to impose a determinate sentence of between

five and twenty-five years, see N.Y. PENAL LAW § 70.02(3)(a), and Petitioner's sentence of fifteen years falls well within the statutory range. On each of the first-degree sexual abuse counts, the court was required to impose a determinate sentence of between two and seven years, see id., § 70.02(3)(c). Although the court imposed the maximum term possible of seven years on each count, the sentence does not exceed what is statutorily permissible. See Echevarria-Perez v. Burge, 779 F. Supp.2d 326, 338 (W.D.N.Y. 2011). Furthermore, all of Petitioner's sentences were set to run concurrently with each other. Where, as here, Petitioner's sentences are within the applicable sentencing ranges, he presents no constitutional claim amenable to habeas review. See White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) (per curiam) (citation omitted).

### D. Insufficiency of the Evidence

In his reply, Petitioner asserts for the first time that he is attacking the sufficiency of the evidence supporting his conviction. According to Petitioner, he actually raised this argument in his petition, in the context of his sentencing claim, based on his assertion that his sentence was excessive given that he was convicted based on only "circumstantial" evidence.

In addition to being improperly asserted for the first time in his reply, see, e.g., Morgan v. Lee, No. 1:11-CV-0390(MAT), 2012 WL 5336167, at *3 (W.D.N.Y. Oct. 26, 2012) (collecting cases), this

purported legal insufficiency claim is unexhausted. Petitioner never raised an insufficiency of the evidence claim in state court, and he has no available avenues in state court by which to exhaust such a claim. As the Court explained above, he has already utilized the one direct appeal to which he is entitled. Because a legal insufficiency claim is a record-based claim, it would be denied pursuant to C.P.L. § 440.10(2)(c) if he attempted to file a motion to vacate. The claim accordingly must be deemed exhausted, but procedurally barred for the same reasons discussed above Section III.B. Petitioner cannot overcome the procedural default for the same reasons that his prosecutorial misconduct claim remains subject to an unexcused default. This claim likewise must be dismissed.

**IV. Conclusion**

For the reasons discussed above, the petition (Dkt. #1) is dismissed. As Petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability will issue. See 28 U.S.C. § 2253(c)(2).

**SO ORDERED.**

S/ Michael A. Telesca
_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:   Rochester, New York
         February 11, 2015